**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| VERNON GALLIER, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-888 |
| | § | |
| WOODBURY FINANCIAL | § | |
| SERVICES, INC., *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This lawsuit arises from the four plaintiffs' investments in variable annuities purchased from 2003 to 2007. The plaintiffs alleged in their state-court petition that the investments were made at the direction of David Mierendorf, a financial advisor and retirement-planning investment professional registered with Woodbury Financial Services, Inc. Woodbury is a citizen of Minnesota. Mierendorf is a citizen of Wisconsin. The plaintiffs are all citizens of Texas.

One of the plaintiffs was retired; the others were nearing retirement. They alleged that following Mierendorf's advice, and based on his promises that they were obtaining a secure investment with a guaranteed lifetime income stream, they cashed out their employer-sponsored retirement plans and invested the proceeds in variable annuities that turned out to be high-risk and lost money. After initiating arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA"), and having that prove unsuccessful, the plaintiffs sued Mierendorf, Woodbury, and Ted Ginsberg — the Woodbury Houston office manager and Mierendorf's supervisor — in Texas state court, alleging breach of contract, unjust enrichment, negligence, breach of fiduciary duty, violations of the Texas Securities Act, violations of the Texas Insurance Code, and breach of warranty.

1

Woodbury removed on the basis of diversity jurisdiction.  Ginsberg, the only other served defendant, consented to the removal.   Woodbury's notice of removal asserted that Ginsberg was improperly joined and that his Texas citizenship and in-state status should be disregarded for the purpose of federal removal jurisdiction.  The plaintiffs moved to remand, and Woodbury responded. (Docket Entry Nos. 6, 10).  Woodbury and Ginsberg also moved to dismiss, to which the plaintiffs responded, and Woodbury replied.  (Docket Entry Nos. 19, 20,  22, 23, 24, 25).  Woodbury finally moved to confirm the FINRA arbitration award issued in its favor.  (Docket Entry No. 18).  The plaintiffs opposed the motion to confirm the award solely on the basis that the court lacked subject-matter jurisdiction over the case.  (Docket Entry No. 21).

Based on the pleadings; the motions, responses, and replies; the arguments of counsel; and the applicable law, the court denies the motion to remand, dismisses the claims against Ginsberg, and grants the application to confirm the FINRA arbitration award.  Woodbury's motion to dismiss is under advisement.

The reasons for these rulings are explained in detail below.

## I.     The Allegations in the State-Court Petition

Plaintiffs Caron Gallier, Kathy Temple, and Deborah Harrison were friends who were about to retire from careers in sales for the "Yellow Pages" at AT&T.  Plaintiff Vernon Gallier was a retired police officer.  Between 2003 and 2007, all four plaintiffs were looking for ways to maximize the benefits they would obtain from their employer-sponsored retirement plan savings.   The plaintiffs  were referred to Mierendorf, an investment adviser and retirement-financial planner at Woodbury. (Docket Entry No. 1, Ex. B, Original Petition, at ¶ 19).  Mierendorf allegedly persuaded the plaintiffs to cash out their employer-sponsored pension plans, which guaranteed them monthly payments after retirement, and invest the proceeds in variable annuities he recommended.

Mierendorf allegedly promised the plaintiffs that the annuities would guarantee them an annual income of seven percent of the investment for their lifetimes, more than they would receive under their employer-sponsored plans.  (*Id.* at pp. 7, 9, 15).

The plaintiffs allege that based on the promises of a guaranteed seven percent annual payment, they cashed out their retirement plans — representing their retirement savings — and transferred the money to Woodbury for Mierendorf to invest.  They allege that Mierendorf invested all their retirement savings in aggressive high-risk annuities and sold them expensive annuity riders.  (*Id.* at pp. 7–12).  The annual fees for these investments were almost 2.5 percent.  The plaintiffs withdrew seven percent of their investments each year, usually after checking with Mierendorf.  (*Id.* at pp. 7–8).  Mierendorf regularly reassured the plaintiffs that their investments were performing as planned, even after the stock market crashed in 2008.  (*Id.* at pp. 9–10, 13–14).  When the plaintiffs asked why their 2008 account statements showed a steep loss, Mierendorf allegedly repeated his prior statements that the annuities were guaranteed to provide them an annual income at a rate of seven percent return and that there was no cause for concern.  Mierendorf assured the plaintiffs that they could continue to withdraw the same amount each year and did not need to change the investment approach.  (*Id.* at p. 16).

Mierendorf left Woodbury for another financial services company in December 2009.  The plaintiffs transferred their accounts from Woodbury to the new company Mierendorf had moved to.  The plaintiffs continued to withdraw seven percent of the annuities every year.  Mierendorf continued to reassure the plaintiffs that the investments would provide them this income for the rest of their lives.  (*Id.* at ¶ 52).

Temple met with Mierendorf in April 2010 to discuss cashing out her husband's employer-sponsored retirement plan and investing the proceeds in variable annuities.  (*Id.* at ¶ 58).  Temple

3

had invested her own retirement savings with Mierendorf in 2007.  Temple and her husband tried

to transfer his retirement account to Mierendorf, but the transfer was rejected.  (*Id.* at ¶¶ 60–61).

When Temple tried to contact Mierendorf, she learned that his phone had been disconnected.  (*Id.*

at ¶ 62).  Temple and the other plaintiffs then learned that in November 2011, Mierendorf had left

the investment business altogether.  (*Id.*).  Neither Mierendorf nor the investment firm he then

worked for told the plaintiffs of his departure.  (*Id.*).

In August 2012, the plaintiffs spoke to Carrie Tacker, who was assigned to manage their

accounts after Mierendorf left the business.  (*Id.* at ¶ 63).  Tacker allegedly told the plaintiffs that

she could not understand Mierendorf's investment strategy.  She described his behavior as "erratic"

and his investment decisions as "reckless."  She specifically criticized his failure to diversity his

clients' investments and to adjust the investments as market conditions changed.  (*Id.*).  Tacker

allegedly told the plaintiffs that she could not confirm that the annuities, which were complex,

provided the annual income Mierendorf had promised.  The plaintiffs alleged that they first became

suspicious about Mierendorf after they talked to Tacker.  (*Id.* at ¶ 64).

In April 2013, the plaintiffs filed a demand for arbitration against Woodbury under the

FINRA rules.  After a hearing, the arbitration panel issued an award finding that the plaintiffs had

sought arbitration too late and that their claims were time-barred.  The panel dismissed the claims

against Woodbury on that basis.  The plaintiffs then sued in state court, adding Ginsberg as a

defendant.  Woodbury removed on the basis of diversity jurisdiction, arguing that Ginsberg was

improperly joined and that his citizenship and in-state status should be disregarded.

In the operative state-court pleading, the plaintiffs asserted claims against all the defendants,

including Ginsberg, for breach of contract, unjust enrichment, negligence, and violations of the

Texas Securities Act.[1]  The factual allegations naming Ginsberg are limited.  The only specific factual allegations against him, as opposed to Mierendorf or the "Defendants" globally, are in paragraph 66 of the state-court petition.  Paragraph 66 stated:

> Upon information and belief, Ginsberg was the designated manager for Mierendorf at all times relevant to this Petition, charged with ensuring that Mierendorf complied with all applicable contractual obligations, regulations, laws, and industry standards.  Throughout the time Plaintiffs had accounts with Woodbury, Ginsberg never once contacted Plaintiffs about the problems within their accounts. Furthermore, Ginsberg failed to properly supervise Mierendorf and prevent him from engaging in the misconduct described above.

(*Id.* at ¶ 66).

Most of the claims in the operative pleading are global.  In their breach-of-contract claim, the plaintiffs allege that they are third-party beneficiaries of one or more written contracts between the "Defendants" and FINRA that were breached as a result of the defendants' violation of the FINRA rules.  The breaches alleged included Ginsberg's failure to supervise Mierendorf as FINRA Rule 3010 requires.  (*Id.* at ¶ 69).  In their unjust-enrichment claim, the plaintiffs allege that the "Defendants" received fees to advise the plaintiffs on their investment accounts but "did not fulfill their reasonably expected duties" to advise them on investments.  (*Id.* at ¶ 126).  In their negligence claim, the plaintiffs allege that the "Defendants" "failed to exercise ordinary care and diligence in

---

[1]  The original state-court petition also asserted claims against Ginsberg for breach of fiduciary duty, violations of the Texas Insurance Code, negligent misrepresentation, fraud, breach of warranty, and breach of oral contract.  The plaintiffs abandoned these claims in their amended complaint filed after removal.  The amended complaint does not substantially add to the limited factual allegations against Ginsberg.  Although the court looks to the state-court record at the time of removal to determine whether subject-matter jurisdiction exists, claims that have been abandoned after removal are "easily dispensed with" because they cannot support jurisdiction over the defendant.  *See Akerblom v. Ezra Holdings Ltd.*, 509 Fed. App'x 340, 345 (5th Cir. 2013) (unpublished) (citing *Bolens v. Redman Homes, Inc.*, 759 F.2d 504, 507–08 (5th Cir. 1985)); *see also Faulk v. Husqvarna Consumer Outdoor Products N.A., Inc.*, 849 F. Supp. 2d 1327 (M.D. Ala. 2012) (plaintiff abandoned all claims against the nondiverse defendant after removal).  To the extent that these abandoned claims are considered, the court finds that they are inadequately pleaded and fail to give Ginsberg fair notice of the factual allegations against him — as opposed to Mierendorf or Woodbury — on which these claims are based.

5

recommending that Plaintiffs cash out their employer sponsored retirement plans and invest the proceeds in the investments described above, in recommending that Plaintiffs make withdrawals which were unsustainable, and in failing to properly allocate the funds within each Annuity." (*Id.* at ¶ 123). In their claims under the Texas Securities Act, TEX. CIV. STAT. Art. 581 *et seq.*, the plaintiffs allege that the "Defendants" misrepresented the risks and benefits of the annuities Mierendorf recommended, making untrue statements and omissions of material facts in connection with the sale of securities. The plaintiffs allege that Woodbury and Ginsberg were "control persons" of Mierendorf and were liable for his conduct. (*Id.* at ¶ 92).

The threshold issue is this court's subject-matter jurisdiction. That turns on whether, based on the allegations in the operative pleading, the plaintiffs have improperly joined Ginsberg to defeat federal jurisdiction. That issue is examined under the applicable legal standards.

## II.    The Motion to Remand

### A.    The Legal Standards for Removal and Remand

A case may be removed to federal court under 28 U.S.C. § 1441(a) when federal subject-matter jurisdiction exists and the removal procedure has been properly followed. The removing party has the burden to show that federal jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Courts strictly construe removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

Federal courts have original jurisdiction over any civil action "where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Although there is complete diversity among the plaintiffs, Woodbury, and Mierendorf, Ginsberg, like the plaintiffs, is a resident of Texas. Remand is required if Ginsberg is properly joined because he is a citizen of the same state as the plaintiffs and because he is an in-state

defendant.  Section 1441(b)(2) states that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

To show that a nondiverse defendant has been improperly joined to defeat diversity, the removing party must prove either that there has been actual fraud in pleading the jurisdictional facts, which does not apply here, or that there is no reasonable possibility that the plaintiff could establish a cause of action against the nondiverse defendant in state court.  *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005).  In determining whether there is a reasonable basis to predict that the plaintiff might recover against a defendant under state law, a court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."  *Id.*  "If the plaintiff can survive a Rule 12(b)(6) challenge, there [generally] is no improper joinder."  *Id.*

There are cases in which a further summary inquiry is appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  *Id.* at 573–74; *see, e.g.*, *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 311 (5th Cir. 2005) (upholding the district court's piercing of the pleadings when the parties had conducted ten months of postremoval discovery).  No party in the present case, however, has asked for such an inquiry.  When, as here, the parties ask the court to consider only the state-court petition, a court determining whether a party has been improperly joined must evaluate all factual allegations "in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff."  *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

The issue is whether the plaintiff has asserted a valid state-law cause of action against the

nondiverse defendant.  *Id*.  The test is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Id*.

The petition on file in the state court when the case was removed controls the inquiry, although state-law claims abandoned after removal do not require remand.  *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995); *Akerblom*, 509 Fed. App'x at 345.  If the pleading reveals a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court.  *Rubin v. Daimlerchrysler Corp.*, No. Civ. A. H:04-4021, 2005 WL 1214605, at *2 (S.D. Tex. May 20, 2005).  If the court determines a nondiverse defendant to be improperly joined, that defendant's citizenship is disregarded for the purpose of determining federal subject-matter jurisdiction and the defendant is dismissed under Federal Rule of Civil Procedure 21.  *See Parr v. Deutsche Bank Nat'l Trust Co.*, No. SA13-cv-930 (XR), 2014 WL 358409, at *2 (Jan 30. 2014) (citing *Akerblom*, 509 Fed. App'x at 347).

In evaluating whether the state-court pleading states a claim against the in-state, nondiverse defendant, the federal court applies the state-court pleading standard, not the federal standard under Rule 12(b)(6).  *See Michels v. Safeco Ins. Co. of Indiana*, 544 Fed. App'x 535, 538 (5th Cir. 2013) (unpublished); *Akerblom*, 509 Fed. App'x at 344; *De La Hoya v. Coldwell Banker Mex., Inc.*, 125 Fed. App'x. 533, 537–38 (5th Cir. 2005) (unpublished) (all applying the Texas pleading standard); *Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, at *6 (S.D. Tex. Dec. 8, 2010).

"Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant."  *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000).  Rule 47 of the Texas Rules of Civil Procedure requires "a short statement of the cause of action sufficient to give fair notice of the claim involved."  "A petition is sufficient if it gives fair

and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Id*. at 897 (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)). Rule 45(b) of the Texas Rules of Civil Procedure make clear that even if an allegation is "evidentiary or [a] legal conclusion," that "shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." *Id.* A petition provides fair notice of a cause of action that may be reasonably be inferred from what is specifically stated, even if the petition does not specifically allege an element of the cause of action. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993).

The claims asserted against Ginsberg in the plaintiffs' petition are examined below.

## B.      The Claim for Breach of Written Contract

The plaintiffs allege a contract between the "Defendants" and FINRA that required compliance with the FINRA rules. The plaintiffs do not attach the contract or allege who was a party to it, when it was signed, or any specific language it contained. The plaintiffs generally allege that such a contract exists and required compliance by the signatory with FINRA's rules. They allege that, as Woodbury clients, they were intended third-party beneficiaries of this contract. The plaintiffs allege that Ginsberg breached the contract he had with FINRA by violating FINRA Rule 3010 in  failing properly to supervise and monitor Mierendorf. (Original Petition at ¶ 77).

There is no private cause of action for violations of FINRA rules. *See Hoxworth v. Blinder Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990); *Jablon v. Dean-Witter & Co.*, 614 F.2d 677 (2d Cir. 1980); *Pittsburgh Terminal Corp. v. Baltimore & O.R. Co.*, 509 F. Supp. 1002, 1015 (W.D. Pa. 1981) *aff'd in part, rev'd in part*, 680 F.2d 933 (3d Cir. 1982), *cert. denied,* 103 S. Ct. 476 (1982); *Millan v. Dean Whitter Reynolds Inc.*, 90 S.W.3d 760, 767 (Tex. App. — San Antonio 2002, pet. denied). The issue is whether the plaintiffs have stated a state-law claim against Ginsberg based on

his alleged breach of a written contract with FINRA to which the plaintiffs are third-party beneficiaries.

Under Texas law, the elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D. Tex. 2012) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

The defendants argue that the breach-of-contract claim against Ginsberg fails as a matter of law because the plaintiffs did not adequately allege that he was a party to a contract with FINRA or what such a contract provided, and because the plaintiffs alleged no basis to predict a reasonable possibility that they could recover against him as intended third-party beneficiaries of the contract. The defendants also allege that limitations bars any contract claim against Ginsberg. Because the court finds that the claim against Ginsberg fails as a matter of law on the first two grounds, the court does not reach the third ground of limitations.

### 1.    The Existence of a Contract

A plaintiff must ultimately prove the existence of a contract to recover on a breach-of-contract claim. Under the fair-notice pleading standard, a plaintiff need not allege the evidence that could prove the existence of a contract to allege a claim for breach of that contract. *See Paragon Sales Co. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex. 1989); *Hofland v. Williamsburg Two Homeowners Ass'n, Inc.*, No. 05-02-00820-CV, 2002 WL 31730966, at *1 (Tex. App. — Dallas, Dec. 5, 2002, no pet.). The fair-notice pleading standard does not require the plaintiffs to attach a copy of the allegedly breached contract. *See Hofland*, 2002 WL 31730966, at *1. But Texas cases do state that the state-court petition "should at least contain allegations of the material

provisions of the contract." *Hankston v. Equable Ascent Fin.*, 382 S.W.3d 631, 635 (Tex. App. —

Beaumont 2012, no pet.) (citing *Twin City Bowling Lanes, Inc. v. C.I.T. Corp.*, 376 S.W.2d 94,

95–96 (Tex. Civ. App. — Fort Worth 1964, no writ); *Crown Asset Mgmt. LLC v. Loving*, 294

S.W.3d 841, 843  (Tex. App. — Dallas 2009, pet. denied) (holding that the petition did not give fair

notice of a breach-of-contract claim because the allegations made it "impossible to determine from

the petition with whom or for what [the defendant] allegedly contracted"); *Joe B. Winslett, Inc. v.

City of Hamlin*, 56 S.W.2d 237, 238–39 (Tex. Civ. App. — Amarillo 1932, no writ)).

The plaintiffs do not appear to have satisfied this standard.  The plaintiffs alleged that the

"Defendants" signed a contract with FINRA that required compliance with FINRA rules, and that

Ginsberg breached this contract by violating FINRA Rule 3010, which required him as a supervisor

to properly monitor representatives and associates such as Mierendorf.  There is no allegation about

who signed the contract with FINRA.  The petition does not allege that Ginsberg — as opposed to

Woodbury — was a party to a contract with FINRA.  That is, there is no sufficient allegation, even

under the Texas pleading rules, that there was a contract between FINRA and Ginsberg.   Absent

this allegation, the petition would not appear to state a breach-of-contract claim against Ginsberg

on which the plaintiffs had a reasonable possibility of recovering under Texas law.

But even if the petition does sufficiently allege the existence of a contract between Ginsberg

and FINRA, the breach-of-contract claim fails because there is no basis to predict that the plaintiffs

could show that they were intended third-party beneficiaries of this contract or of a contract between

FINRA and Woodsbury.

### 2.    Third-Party Beneficiary Status

"[T]he presumption in contract law is against finding that a stranger to a contract is a third

party beneficiary, so as to confer legal standing to enforce the contract's stated obligations, even if

11

the contract expressly states that one of the signatories may have obligations to that stranger.  A party is presumed to contract only for its own benefit; any intent to benefit a third party must be clearly apparent." *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 456 (Tex. App. — Houston [1st Dist.], 2007, pet. denied) (internal citations omitted) (citing *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).  "A third party may recover on a contract . . . only if the parties entered into the contract directly for the third party's benefit and does not have a right to enforce the contract if he or she received only an incidental benefit."  14 TEX. JUR. 3D CONTRACTS § 283 (2008).

The plaintiffs rely on a contract that they allege Ginsberg signed requiring him to follow FINRA rules.  As noted, there is no private cause of action allowing a customer to sue a FINRA member on the basis that they violated the FINRA rules.  *See Hoxworth v. Blinder Robinson & Co.*, 903 F.2d at 200; *Jablon*, 614 F.2d at 681; *Pittsburgh Terminal Corp.*, 509 F. Supp. at 1015; *Millan*, 90 S.W.3d at 767.  Under the plaintiffs' theory, by contracting to follow FINRA rules, all FINRA members give their customers a basis to sue the members for breaching their contracts with FINRA and to seek damages for FINRA rule violations.

Courts have rejected attempts to recharacterize FINRA claims as breach-of-contract claims to circumvent the absence of a private right of action for violations of FINRA rules.  *See Salzmann v. Prud. Sec. Inc.*, No. 91-Civ-4253 (KTD), 1994 WL 191855, at **7–8 (S.D.N.Y. May 16, 1994) ("To hold that plaintiffs are entitled to make a third-party beneficiary claim is to hold, in effect, that plaintiffs have a private cause of action under the NYSE and the NASD rules."); *Bloch v. Prudential-Bache Sec.*, 707 F. Supp. 189, 196 (W.D. Pa. 1989) ("third party beneficiary liability seems incongruous with the large body of case law holding that no private cause of action exists for violation of the rules of self-regulatory organizations").

The plaintiffs rely on cases allowing a customer to require a FINRA member to arbitrate disputes under FINRA's dispute-resolution rule. *See, e.g.*, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 749 (9th Cir.), *cert. denied sub nom. City of Reno, Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014); *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648–49 (2d Cir. 2011); *J.P Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 76–77 (S.D.N.Y. 2010) ("FINRA rules may establish the requisite arbitration agreements."). These cases do not hold, or support the plaintiffs' argument, that the contracts between FINRA and its members give customers the right as third-party beneficiaries of those contracts to sue the members or a member's manager for violating a FINRA rule. Instead, courts have held that the FINRA rule requiring arbitration with "consumers" allows a FINRA member's customer to require the member to arbitrate. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 749 (9th Cir.) *cert. denied sub nom. City of Reno, Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014) ("FINRA Rule 12200 constitutes an agreement in writing under the Federal Arbitration Act ('FAA') and Reno is entitled to invoke FINRA Rule 12200 as an intended third-party beneficiary."). The cases using the third-party beneficiary language refer to the customers as third-party beneficiaries of the agreement to comply with the FINRA rule requiring arbitration of disputes. *See, e.g., Goldman*, 747 F.3d at 749. The cases do not hold that customers are the third-party beneficiaries of a contract between FINRA and its members, or that a FINRA member's resistance to arbitration creates a breach-of-contract claim for its customers.

Other cases emphasize that the customer's own contract with the FINRA member incorporated by reference the agreement to arbitrate contained in the FINRA rules. *See, e.g., Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 864 (2d Cir. 1994) ("the Customer's Agreement simply affirms that [arbitration] option by incorporating the NASD Code

13

by reference. It is well established that an agreement to arbitrate may be incorporated by reference into a second contract.").

The cases do not support the plaintiffs' allegation that a member's contract with FINRA makes all that member's customers intended third-party beneficiaries of that contract. The plaintiffs' claim that they are the intended third-party beneficiaries of a contract between Ginsberg and FINRA, entitled to enforce FINRA rules through a claim for breach of that contract, shows no reasonable possibility of success in state court. The breach-of-contract claim does not require remand.

### B. The Claim for Unjust Enrichment

Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received. *Walker v. Cotter Props., Inc*., 181 S.W.3d 895, 900 (Tex. App. — Dallas 2006, no pet.). "A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress or taking of undue advantage." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. — Corpus Christi 2002, pet. denied) (citing *HECI Exploration*, 982 S.W.2d at 891).

The unjust-enrichment cause of action is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 740 (Tex. 2005) (internal quotation marks omitted). Recovery on an unjust-enrichment claim is not available merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to the claimant, or because the defendant received a windfall profit or benefit. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992). Unjust enrichment does not rescue a plaintiff from "the consequences of a bad bargain." The enrichment of one party at the expense of the other is not unjust if the parties had an

14

express contract that permits it. *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. — Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998). "The simplest case of unjust enrichment liability is the mistaken payment. The plaintiff, thinking she owes the defendant $100, pays that amount, but in fact she does not owe anything. But the transfer takes effect as such, so that the defendant becomes the owner of the money." Lionel Smith, *Restitution: The Heart of Corrective Justice*, 79 TEX. L. REV. 2115, 2141 (2001) (footnote omitted).

The plaintiffs allege that Ginsberg and the other defendants received commissions, fees, and sales charges in exchange "for their work on behalf of Plaintiffs in selecting and recommending appropriate securities" but "did not fulfill their obligations" in connection with that work. (Original Petition at ¶ 126). These allegations are insufficient to state a claim against Ginsberg under Texas law on unjust enrichment. The plaintiffs do not allege that Ginsberg selected and recommended securities for them or gave them investment advice. The state-court petition alleges that Mierendorf was the only person at Woodbury the plaintiffs talked to or received investment advice from. The plaintiffs' petition does not allege a reasonable possibility that they could recover against Ginsberg in state court on an unjust-enrichment claim.[2] This claim does not require remand.

### C.    Negligence

The plaintiffs allege that all of the defendants negligently harmed them by failing "to exercise ordinary care and diligence in recommending that Plaintiffs cash out their employer sponsored retirement plans and invest the proceeds in the investments described above, in recommending that Plaintiffs make withdrawals which were unsustainable, and in failing to properly

---

[2] In their motion to remand, the plaintiffs argue that it would be unjust for Ginsberg to retain fees he received because he failed to properly supervise Mierendorf. This allegation does not appear in the state-court petition. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (improper joinder is determined based only on the state-court record at the time of removal).

allocate the funds within each Annuity." (Original Petition at ¶ 123). The defendants argue that the negligence claim against Ginsberg necessarily fails because he owed the plaintiffs no duty of care. The plaintiffs do not address this argument in their motion to remand or briefs.

The plaintiffs' petition does not allege that Ginsberg took any of the actions described as the basis for the negligence claim. The factual allegations are that Mierendorf, and only Mierendorf, recommended that the plaintiffs cash out their employer-sponsored retirement plans, invest in variable annuities, and make annual seven percent withdrawals. The plaintiffs allege that Mierendorf, and only Mierendorf, decided how to invest and allocate their funds.

There is no allegation that Ginsberg owed a duty to the plaintiffs that he breached. To satisfy the "fair notice" pleading standard for a negligence claim, the allegations must describe the facts or circumstances from which it is claimed that the defendant breached a duty. *See Hernandez Castellanos v. Bridgestone Corp.*, 215 F. Supp. 2d 862, 864 (S.D. Tex. 2002) (pleadings in a negligence case fail if "there has been no allegation of a crucial element of the cause of action such as facts or circumstances from which it could be found that the defendant breached any duty owed, or any act or omission that could constitute negligence" (quoting *Rodriquez v. Yenawine*, 556 S.W.2d 410, 414 (Tex. App. — Austin 1977, n.w.h.))); *see also Ford*, 178 S.W.3d at 335 ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim."); *Griggs*, 181 F.3d at 699 (a petition that mentioned the individual defendant once in passing and "fail[ed] to state any specific actionable conduct on her part whatsoever," did not meet the fair notice pleading requirement).

The plaintiffs do not allege that Ginsberg owed them a duty that he breached. The only specific allegation against Ginsberg, which does not appear in the plaintiffs' negligence claim, is that he "failed to properly supervise Mierendorf and prevent him from engaging in . . . misconduct."

16

(Original Petition at ¶ 66).  There is no allegation that Ginsberg owed the plaintiffs a duty properly to supervise Mierendorf.  Under Texas law, a corporate manager cannot be personally liable for actions taken in the course and scope of his employment absent an independent legal duty owed to the plaintiff.  *See Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996); *Watkins v. Basurto*, No. 14-10-00299-CV, 2011 WL 1414135, at *4 n. 7 (Tex. App. — Houston [14th Dist.] Apr. 14, 2011, no pet.); *Pico v. Capriccio Italian Rest., Inc.*, 209 S.W.3d 902, 912 (Tex. App. — Houston [14th Dist.] 2006, no pet.).  The allegations do not show a reasonable possibility that the plaintiffs could recover on their negligence claim against Ginsberg in state court.  This claim does not require remand.

### D.    The Texas Securities Act Claim

The plaintiffs allege that the defendants violated the Texas Securities Act, TEX. CIV. STAT. Art. 581 *et seq.*, "by making untrue statements of material facts and omitting to state material facts necessary to make their statements, in light of the circumstances under which they were made, not misleading, in violation of TEX. CIV. CODE. ANN. § 581-33."  (Original Petition at ¶ 90).  The plaintiffs also allege that Ginsberg and Woodbury were "control persons" of Mierendorf and were liable for his violations of the Texas Securities Act.  (*Id.* at ¶ 92).

Article 581-33 of the Texas Securities Act imposes liability on "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security, . . . unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  TEX. CIV. STAT. Art. 581-33.  The defendants argue that the state-court petition shows that the variable annuities Mierendorf sold the plaintiffs were not "securities" covered by the Texas Securities Act.

Under the Texas Securities Act, a "security" includes an "investment contract" but excludes

any "annuity contract, optional annuity contract, or any contract or agreement in relation to or in consequence of any such policy or contract." TEX. CIV. STAT. Art. 581-4(A). The United States Supreme Court has held that variable annuities are investment contracts for the purposes of federal securities laws. *See S.E.C. v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65 (1959). The Texas Supreme Court has used the United States Supreme Court's definition of an "investment contract" in applying the Texas Securities Act. *See Searsy v. Comm. Trading Corp.*, 560 S.W.2d 637, 640 (Tex. 1977) (quoting the definition of an "investment contract" set out in *v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) and stating that the definition was "accepted and used" by Texas courts).

While the Texas Supreme Court has adopted this definition of an "investment contract," it has not adopted the statutory definition of covered "securities" from federal securities laws. The Texas Securities Act contains an exception that the federal law at issue in *Variable Annuity Life Insurance* did not. The Texas Securities Act states that any "annuity contract, . . . or any contract or agreement in relation to and in consequence of such a policy or contract," is not a security under the Act. While federal securities laws, which contain no such exception, cover the purchase and sale of variable annuities, the plaintiffs have presented no basis to conclude that a variable annuity is not an "annuity contract" or an agreement in relation to an annuity contract. Nor is there a basis to conclude that the United States Supreme Court's 1959 holding that federal laws cover variable annuity contracts would negate the language excluding these investments from coverage under the Texas Securities Act. Because the plaintiffs have not alleged that the challenged transactions involved securities covered by the Texas Securities Act, there is no basis to predict a reasonable possibility that the plaintiffs could recover on a Texas Securities Act claim against Ginsberg in state court. This claim does not require remand.

E.    **Conclusion as to Remand**

18

The state-court petition at the time of removal shows no reasonable possibility that the plaintiffs could recover against Ginsberg on any of their claims against him.  Ginsberg was improperly joined and is dismissed under Rule 21.  Because the remaining parties are completely diverse and none is in-state, the motion to remand is denied.

The court's ruling that the plaintiffs cannot recover against Ginsberg on any of the four claims they assert against him does not dispose of the remaining claims against Woodbury on the grounds it asserts, or against Mierendorf, including the separate claims against these defendants for breach of oral contract, breach of warranty, negligent misrepresentation, violations of the Texas Insurance Code, fraud, and breach of fiduciary duty.  The holding in *Smallwood II*, 385 F.3d at 571, stating that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant," does not require remand, because claims against other defendants remain and because the court has not decided the jurisdictional issue on grounds that might apply to all the defendants.  *See Boone v. Citigroup*, 416 F.3d 382, 390–91 (5th Cir. 2005) ("It bears emphasizing that *Smallwood II* applies '*only* in that limited range of cases where the allegation of improper joinder rests *only* on a showing that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant and *that* showing is *equally* dispositive of *all* defendants.'" (emphasis in original) (quoting *Smallwood II*, 385 F.3d at 576)).

The motion to remand is denied.

## III.    The Motion to Confirm the Arbitration Award

The four plaintiffs demanded FINRA arbitration against Woodbury in April 2013, asserting claims for breach of contract, breach of warranty, violations of the Texas Securities Act, unjust

19

enrichment, fraud, and violations of the Texas consumer protection and deceptive trade practices laws. The arbitrators held hearings and issued a final and binding award on December 13, 2013. (Docket Entry No. 18, Ex. B). The arbitrators found that the claims were not arbitrable because they were predicated on events that occurred over six years before the plaintiffs demanded arbitration. The final award denied and dismissed each of the plaintiffs' claims against Woodbury with prejudice to refiling in arbitration. Woodbury and the plaintiffs agree that the December 2013 FINRA award does not have a preclusive effect on the plaintiffs' claims in this case. (Docket Entry No. 22 at 5).

Woodbury moves to confirm the December 2013 arbitration award issued in the arbitration the plaintiffs initiated and pursued. A court "must grant" confirmation of an arbitration award unless the award is vacated, modified, or corrected under the Federal Arbitration Act. 9 U.S.C. § 9. The district court's review of an arbitration award under the FAA is "extraordinarily narrow." *Prescott v. Northlake Christian School*, 369 F.3d 491, 494 (5th Cir. 2004). The plaintiffs have not filed a motion to vacate, modify, or correct the December 2013 award, and the deadline for doing so has passed. *See* 9 U.S.C. § 12 (stating that an action to vacate, modify, or correct an award must be filed within three months after the award is issued and served). The plaintiffs initially opposed the motion for confirmation on the ground that this court lacked subject-matter jurisdiction over this case. The court has found that it does have federal removal jurisdiction. The plaintiffs do not oppose the motion for confirmation on any other ground, and the record discloses no other ground for doing so.

The court confirms the December 2013 FINRA arbitration award.

## IV.   Conclusion

The court finds that Ginsberg was improperly joined. The claims against him are dismissed. The motion to remand, (Docket Entry No. 6), is denied. The application to confirm the December 2013 FINRA arbitration award, (Docket Entry No. 18), is granted. Woodbury's motion to dismiss

is under advisement.

      SIGNED on March 23, 2015, at Houston, Texas.

                    Lee H. Rosenthal
               United States District Judge

21