**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| VERNON GALLIER, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-888 |
| | § | |
| WOODBURY FINANCIAL | § | |
| SERVICES, INC., *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This lawsuit arises from the four plaintiffs' investments in variable annuities purchased from 2003 to 2007.  The plaintiffs alleged in their state-court petition that the investments were made at the direction of David Mierendorf, a financial advisor and retirement-planning investment professional registered with Woodbury Financial Services, Inc.  One of the plaintiffs was retired; the others were nearing retirement.  They alleged that based on Mierendorf's promises that they were obtaining a secure investment with a guaranteed lifetime income stream, they cashed out their employer-sponsored retirement plans and invested the proceeds in variable annuities that turned out to be high-risk and lost money.  After initiating arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA"), and having that prove unsuccessful, the plaintiffs sued Mierendorf, Woodbury, and Ted Ginsberg—the Woodbury Houston office manager and Mierendorf's supervisor—in Texas state court, alleging breach of contract, unjust enrichment, negligence, breach of fiduciary duty, violations of the Texas Securities Act, violations of the Texas Insurance Code, and breach of warranty.

Woodbury removed on the basis of diversity jurisdiction, alleging that Ginsberg, the only

1

nondiverse party and an in-state defendant, was improperly joined.  (Docket Entry No. 1).  The court found that the plaintiffs' original state-court petition did not allege any reasonable basis for recovery against Ginsberg.  The court denied the plaintiffs' motion to remand the case to state court and dismissed the claims against Ginsberg.  (Docket Entry No. 26).

Woodbury has moved to dismiss the plaintiffs' claims against it.  (Docket Entry No. 19).  The plaintiffs responded, and Woodbury replied.  (Docket Entry Nos. 22, 24).  Based on the pleadings; the motion, response, and reply; and the applicable law, the court grants the motion to dismiss in part.  The plaintiffs' claims for violation of FINRA rules, violation of the Texas Securities Act, and breach of fiduciary duty are dismissed with prejudice.  The plaintiffs' claims for unjust enrichment are dismissed without prejudice.  The plaintiffs may file an amended complaint no later than June 25, 2015.  The plaintiffs' claims against Woodbury for breach of oral contract, violation of the Texas Insurance Code, negligence, negligent misrepresentation, and fraud are not dismissed.  The plaintiffs' claims against Mierendorf, for which the plaintiffs seek to hold Woodbury liable under the doctrines of *respondeat superior* and agency, also remain.  Counsel for all parties are ordered to appear for a status and scheduling conference on July 24, 2015, at 8:30 a.m. in Courtroom 11-B.

The reasons for these rulings are set out below.

## I.  Background

Plaintiffs Caron Gallier, Kathy Temple, and Deborah Harrison were friends who were about to retire from careers in sales for the "Yellow Pages" at AT&T.  (Docket Entry No. 17 at ¶ 18).  Plaintiff Vernon Gallier was a retired police officer.  (*Id.*).  Between 2003 and 2007, all four plaintiffs were looking for ways to maximize the benefits they would obtain from their employer-

sponsored retirement plan savings.  The plaintiffs  were referred to Mierendorf, an investment adviser and retirement-financial planner at Woodbury.  (*Id.*).  Mierendorf allegedly persuaded the plaintiffs to cash out their employer-sponsored pension plans, which guaranteed them monthly payments after retirement, and invest the proceeds in variable annuities he recommended. Mierendorf allegedly promised the plaintiffs that the annuities would guarantee them an annual income of 7 percent of the investment for their lifetimes, more than they would receive under their employer-sponsored plans.  (*Id.* at pp. 7, 9, 15).

The plaintiffs allege that based on the promises of a guaranteed 7 percent annual payment, they cashed out their retirement plans and transferred their retirement savings to Woodbury for Mierendorf to invest.  They allege that Mierendorf invested the money in aggressive high-risk annuities and sold them expensive annuity riders.  (*Id.* at pp. 6–15).  The annual fees for these investments were almost 2.5 percent.

The plaintiffs withdrew 7 percent of their investments each year, usually after checking with Mierendorf.  (*Id.*).  Mierendorf regularly reassured the plaintiffs that their investments were performing as planned, even after the stock market crashed in 2008.  (*Id.*).  When the plaintiffs asked why their 2008 account statements showed a steep loss, Mierendorf allegedly repeated his prior statements that the annuities were guaranteed to provide them an annual income at a rate of 7 percent return and that there was no cause for concern.  Mierendorf assured the plaintiffs that they could continue to withdraw the same amount each year and did not need to change the investment approach.  (*Id.* at pp. 15–16).

Mierendorf left Woodbury for another financial-services company in December 2009.  (*Id.* at ¶¶ 49, 56).  The plaintiffs transferred their accounts from Woodbury to the new company

Mierendorf had moved to.  The plaintiffs continued to withdraw 7 percent of the annuities every year.  Mierendorf continued to reassure the plaintiffs that the investments would provide them this income for the rest of their lives.  (*Id.* at ¶¶ 51, 58).

Temple met with Mierendorf in April 2010 to discuss cashing out her husband's employer-sponsored retirement plan and investing the proceeds in variable annuities.  (*Id.* at ¶ 57).  Temple had invested her own retirement savings with Mierendorf in 2007.  Temple and her husband tried to transfer his retirement account to Mierendorf, but the transfer was rejected.  (*Id.* at ¶¶ 57–58).  When Temple tried to contact Mierendorf, she learned that his phone had been disconnected.  (*Id.* at ¶ 60).  Temple and the other plaintiffs then learned that in November 2011, Mierendorf had left the investment business altogether.  (*Id.*).  Neither Mierendorf nor the investment firm he then worked for told the plaintiffs of his departure.  (*Id.*).

In August 2012, the plaintiffs spoke to Carrie Tacker, who was assigned to manage their accounts after Mierendorf left the business.  (*Id.* at ¶¶ 61–62).  Tacker allegedly told the plaintiffs that she could not understand Mierendorf's investment strategy.  (*Id.* at ¶ 62).  She described his behavior as "erratic" and his investment decisions as "reckless."  She specifically criticized his failure to diversify his clients' investments and to adjust those investments as market conditions changed.  (*Id.*).  Tacker allegedly told the plaintiffs that she could not confirm that the annuities provided the annual income Mierendorf had promised.  The plaintiffs alleged that they first became suspicious about Mierendorf after they talked to Tacker.  (*Id.* at ¶ 64).

In April 2013, the plaintiffs filed a demand for arbitration against Woodbury under the FINRA rules.  After a hearing, the arbitration panel issued an award finding that the plaintiffs had sought arbitration too late and that their claims were time-barred.  The panel dismissed the claims

4

against Woodbury on that basis.  The plaintiffs then sued Woodbury and Mierendorf in state court and added Ginsberg as a defendant.  (Docket Entry No. 1, Ex. B).  Woodbury removed on the basis of diversity jurisdiction, arguing that Ginsberg was improperly joined and that his citizenship and in-state status should be disregarded.  (Docket Entry No. 1).  The court denied the plaintiffs' motion to remand and dismissed the claims against Ginsberg, finding that the plaintiffs had no reasonable possibility of recovering against Ginsberg in state court.  (Docket Entry No. 26).  The claims against Woodbury and Mierendorf remain.

## II.      The Applicable Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris*

*v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend*

6

*Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).
Prior unsuccessful amendments may also justify granting dismissal without leave to amend, with
prejudice.  *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (stating that "repeated
failure to cure deficiencies with prior amendment" justifies denying leave to amend) (internal
quotation omitted).

## III.     The Motion to Dismiss

Woodbury moves to dismiss the plaintiffs' claims against it.  (Docket Entry No. 19).  The
plaintiffs allege breach of written contract, breach of oral contract, breach of fiduciary duty,
violation of the Texas Securities Act, unjust enrichment, fraud, negligence, breach of warranty, and
violations of the Texas Insurance Code.

### A.     Claims Already Determined to Be Inadequately Pleaded

The court has already found inadequate the plaintiffs' claim against Ginsberg for breach of
written contract based on their alleged third-party beneficiary status under FINRA member
agreements.  (Docket Entry No. 26).  The FINRA claim against Woodbury fails for the same reason.
The FINRA member agreement does not give the plaintiffs the right to sue for violations of FINRA
rules.  This claim is dismissed with prejudice, because amendment would be futile.

The court also found inadequate the plaintiffs' Texas Securities Act claim against Ginsberg.
(*Id.*).  The claim against Woodbury fails for the same reason: variable annuities are not "securities"
as defined under the Texas Securities Act.  This claim is dismissed with prejudice, because
amendment would be futile.

### B.     Statute of Limitations

The plaintiffs' claims against Mierendorf are subject to statutes of limitations.  *See* TEX. CIV.

PRAC. & REM. CODE § 16.051 (breach of oral contract—4 years); TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) (fraud—4 years); TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) (breach of fiduciary duty—4 years); TEX. CIV. PRAC. & REM. CODE § 16.003(a) (negligence and negligent misrepresentation—2 years); TEX. INS. CODE § 541.262 (Texas Insurance Code—2 years); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (unjust enrichment—2 years). The plaintiffs alleged that they had investments at Woodbury until December 2009, when Mierendorf moved to another broker-advisor. Woodbury's claimed violations and breaches must have occurred before that date. The plaintiffs filed an arbitration demand in April 2013, and the applicable statutes of limitations were tolled during that proceeding. If the plaintiffs' claims accrued no later than December 2009, the 2-year statutes of limitations would bar the plaintiffs' claims for negligence, negligent misrepresentation, unjust enrichment, and violation of the Texas Insurance Code.

The breach of contract, breach of fiduciary duty, and fraud claims are subject to a 4-year statute of limitations. Whether these claims are barred depends on when the claims accrued.

The plaintiffs argue that all of their claims are timely because the statutes of limitations were tolled by fraudulent concealment. Alternatively, they argue that under the discovery rule, the claims did not accrue until August 2012, when they met with Tacker and discovered Mierendorf's misconduct.

### 1.    Fraudulent Concealment

Under Texas law, a defendant's fraudulent concealment of wrongdoing may toll the statute of limitations until the fraud could have been discovered with reasonable diligence. *See Reeves v. JPMorgan Chase Bank, N.A.*, 2012 WL 256945, at *3 (W.D. Tex. Sept. 28, 2012); *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011); *USPPS Ltd. v. Avery Dennison Corp.*, 326 F.

App'x 842, 850 (5th Cir. 2009). Fraudulent concealment is an estoppel theory that applies only if the defendant had a duty to disclose certain acts or omissions and acted to prevent the plaintiff from learning that he or she had a claim. *See Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983); *Bayou Bend Towers v. Manhattan Constr. Co.*, 866 S.W.2d 740 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Fraudulent concealment does not toll the statute of limitations against a defendant who neither knows that the plaintiff was wronged nor participates in concealing the wrongdoing. *See Earle v. Ratliffe*, 998 S.W.2d 882, 888 (Tex. 1999).

The plaintiffs allege that Woodbury "knowingly made false statements of fact to, and omitted or concealed true statements of fact from, the Plaintiffs." (Docket Entry No. 17 at ¶ 96). This is sufficient to allege that the statute of limitations is tolled based on fraudulent concealment until "the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Earle*, 998 S.W.2d at 888.

## 2.    The Discovery Rule

The general rule is that a cause of action accrues when a wrongful act causes some legal injury. *See TGI Ins. Co v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). The discovery rule is an exception to this general rule. Under Texas law, if an injury is both inherently undiscoverable and objectively verifiable, the statute of limitations runs "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the discovery was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977); *see also HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

Whether the discovery rule tolls the statute of limitations depends on whether the plaintiffs' investment losses were inherently undiscoverable. The discovery rule is not equitable in nature, but

9

is restricted to "exceptional cases." *Via Net v. TIG Ins. Co*, 211 S.W.3d 310, 313 (Tex. 2006) ("Some contract breaches may be inherently undiscoverable and objectively verifiable.  But those cases should be rare.").  An "inherently undiscoverable" injury "need not be absolutely impossible to discover." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).  Instead, the injury must be "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.*  Courts applying Texas law have held that injuries allegedly caused by misrepresentations about investments are often inherently undiscoverable within the limitations period and are objectively verifiable. *See Hendricks v. Thornton*, 973 S.W.2d 348, 365 (Tex. App.—Beaumont 1998, pet. denied) ("[I]t is most unlikely that an investor would know that representations about an investment program allegedly made, or authorized to be made, by an auditor/accountant in a brochure, prospectus, or tax opinion were false or misleading at the time of investment.  Otherwise, the investors would not have invested."); *Hanley v. First Investors Corp.*, 793 F. Supp. 719, 723 (E.D. Tex. 1992) ("The gravamen of plaintiffs' complaint is not that the defendants sold them securities which fluctuated in value, but rather that the defendants fraudulently misrepresented the risks associated with these securities. While there may be cases where the fluctuations are so dramatic that a reasonable investor who was aware of the fluctuations could be held to be on notice of fraud for purposes of the discovery rule, this is not so obvious a case.").

This case is similar to *Hendricks* and *Hanley*.  The plaintiffs allege that Mierendorf assured them that their investments would provide "guaranteed money for life."  (Docket Entry No. 17 at ¶ 32).  The plaintiffs claim that Woodbury failed to supervise Mierendorf and prevent him from misrepresenting the benefits of the variable annuities, the risks of loss, and the low probability that the annuities would provide each plaintiff "guaranteed money for life" at a 7 percent annual

withdrawal rate with no loss of principal.  (*Id.*).  Although the plaintiffs allege that their account statements showed that their investments lost value in 2008, they were still able to withdraw 7 percent each year.  When asked about the issues, Mierendorf allegedly repeatedly assured them that the income was "guaranteed" and that there was no need to change the account allocation or withdrawal amounts or to worry.  (*Id.* at ¶¶ 32, 47, 55).  The plaintiffs alleged that until August 2012, they believed they would continue to receive the 7 percent annual income for their lifetimes.

Accepting the facts pleaded in the plaintiffs' amended complaint as true, the court cannot say that the fraudulent-concealment and discovery-rule exceptions do not postpone the accrual of the plaintiffs' claims until August 2012, when the plaintiffs met with Tacker, or toll the statute of limitations while the facts giving rise to their claims were fraudulently concealed.  Dismissal based on the statute of limitations is not appropriate at this stage.  *See, e.g.*, *USPPS*, 326 F. App'x at 851 (if the plaintiff has adequately alleged that the discovery rule or the fraudulent concealment doctrine may apply, dismissal based on the statute of limitations is inappropriate on a Rule 12(b)(6) motion).

### D.     Breach of Oral Contract

The plaintiffs allege that "Defendants" entered into an oral contract promising that the variable annuities they invested in would provide them "guaranteed income for life," well above the amounts that their employer-sponsored plans would provide.  (Docket Entry No. 17 at ¶ 79).   In exchange for Mierendorf's and Woodbury's agreement to provide reliable investment advice and recommended investments that would provide guaranteed income, the plaintiffs agreed to move their accounts to Woodbury and pay various commissions and fees.  (*Id.*).  Woodbury argues that the plaintiffs' breach-of-oral-contract claim is a misclassified tort claim, and that the plaintiffs purchased the annuities from Hartford, a non-party to this suit, not from Woodbury.

11

"The nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* (citing *Mid-Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 312 (Tex. 1978)). The plaintiffs' injury was that the investments Mierendorf and Woodbury allegedly recommended did not guarantee the promised "income for life."  This claim is properly classified as one for breach of oral contract.  Because the plaintiffs' claimed injury is not based on how the annuities were managed, but on Mierendorf's and Woodbury's recommendations, the fact that the annuities were purchased from Hartford does not make this pleading inadequate.  The claim for breach of an oral contract remains.

      **E.**      **Breach of Fiduciary Duty**

The plaintiffs allege that Woodbury and Mierendorf owed them a fiduciary duties in their roles as financial advisors, including a duty to recommend appropriate investments, to research investments before recommending them, to refrain from misrepresenting the characteristics of the investments, and to act with reasonable care in managing the plaintiffs' assets.  (Docket Entry No. 17 at ¶ 112).  The plaintiffs claim that Mierendorf and Woodbury breached those duties by convincing the plaintiffs to cash out their employer-sponsored retirement plans and purchase high-risk variable annuities that did not perform as promised.  (*Id.* at ¶ 114).

The issue is whether a fiduciary relationship existed between Woodbury and the plaintiffs. "[T]he nature of the duty owed by a broker will vary depending on the relationship between the broker and the investor," *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998).  Different duties are owed for discretionary and non-discretionary accounts.  *Western*

*Reserve Life Assurance Co. of Ohio v. Graben*, 233 S.W.3d 360, 374 (Tex. App.—Fort Worth 2007, no pet.).  The plaintiffs' accounts were all non-discretionary.  (Docket Entry No. 17 at ¶¶ 25, 38, 44, 52).  "[A] stockbroker's only duty to a client with a non-discretionary account is to faithfully carry out the client's instructions."  *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex. 1998) (citation omitted).  "[A] broker's duty in relation to a nondiscretionary account is complete, and his authority ceases, when the sale or purchase is made and the receipts therefrom are accounted for."  *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 493–94 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  The plaintiffs cite no authority in support of their argument that a broker owes any further duties in connection with a non-discretionary account.[1]  The plaintiffs have not alleged any legal duty Woodbury owed to the plaintiffs, that was breached.  The only duty Woodbury and Mierendorf owed the plaintiffs was the duty to carry out the plaintiffs' investment instructions.  The plaintiffs do not allege that this duty was breached.  The breach of fiduciary claims against Woodbury fail as a matter of law.  These claims are dismissed with prejudice, because amendment would be futile.

### F.    Unjust Enrichment

Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received.  *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.).  "A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress or taking of undue advantage."

---

[1]  *Cf. Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.*, 923 S.W.2d 112, 115–16 (Tex. App.—Houston [14th Dist.] 1996, no writ) (addressing the duties a loan broker owed to his employer when the broker had failed to procure loans that satisfied the promised requirements); *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 324 (5th Cir. 1981), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213  (1985) (dealing with discretionary accounts).

13

*Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied) (citing *HECI Exploration*, 982 S.W.2d at 891).

The unjust-enrichment cause of action is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (internal quotation marks omitted). Recovery on an unjust-enrichment claim is not available merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to the claimant, or because the defendant received a windfall profit or benefit. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992). Unjust enrichment does not rescue a plaintiff from "the consequences of a bad bargain." The enrichment of one party at the expense of the other is not unjust if the parties had an express contract that permits it. *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998). "The simplest case of unjust enrichment liability is the mistaken payment. The plaintiff, thinking she owes the defendant $100, pays that amount, but in fact she does not owe anything. But the transfer takes effect as such, so that the defendant becomes the owner of the money." Lionel Smith, *Restitution: The Heart of Corrective Justice*, 79 TEX. L. REV. 2115, 2141 (2001) (footnote omitted).

The plaintiffs allege that all of the defendants received commissions, fees, and sales charges in exchange "for their work on behalf of Plaintiffs in selecting and recommending appropriate securities," but "did not fulfill their obligations" in connection with that work. (Docket Entry No. 17 at ¶ 120). These allegations are insufficient to give Woodbury fair notice of the basis for an unjust-enrichment claim against it. The plaintiffs do not allege that Woodbury itself, as opposed to Mierendorf, a Woodbury employee, selected and recommended securities for them, or gave them

14

any investment advice.  The amended complaint alleges that the plaintiffs only spoke to Mierendorf about their investments.

In their response to the motion to dismiss, the plaintiffs claim that they paid Woodbury commissions and fees and that "Woodbury was reasonably expected to supervise Mierendorf" in exchange for that money.  (Docket Entry No. 22 at p. 23).  This allegation does not appear in the plaintiffs' amended complaint and is not appropriately considered in deciding the motion to dismiss. *See Coach, Inc. v. Angela's Boutique*, No. Civ. A. H-10-1108, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) ("Allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." (citing *Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); James W. Moore, 2 Moore's Federal Practice, § 12.34  (Matthew Bender 3d ed. 2004)); *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 263 (5th Cir. 2008) ("[W]hen deciding, under Rule 12(b)(6), whether to dismiss for failure to state a claim, the court considers, of course, only the allegations in the complaint.").  The plaintiffs' claims for unjust enrichment are dismissed, without prejudice.  The plaintiffs may amend to specify the acts of "fraud, duress, or taking of undue advantage" that give rise to the claim.

## G. Remaining Claims

Woodbury moved to dismiss the plaintiffs' claims for violations of the Texas Insurance Code, fraud, negligent misrepresentation, and negligence based on the statute of limitations.  The court has found that the plaintiffs have sufficiently pleaded that the statute of limitations is tolled based on fraudulent concealment, or that the claims did not accrue until August 2012 under the

discovery rule.  Woodbury has not moved to dismiss these claims on any other basis.  Woodbury also has not moved to dismiss the claims asserted against Mierendorf for which the plaintiffs seek to hold Woodbury liable under the doctrines of *respondeat superior* and agency.  These claims are not dismissed.

## IV.    Conclusion

Woodbury's motion to dismiss, (Docket Entry No. 19), is granted in part.  The plaintiffs' claims for violation of FINRA rules, violation of the Texas Securities Act, and breach of fiduciary duty are dismissed with prejudice.  The plaintiffs' claims for unjust enrichment are dismissed without prejudice.  The plaintiffs may file an amended complaint no later than June 25, 2015.  The plaintiffs' claims against Woodbury for breach of oral contract, violation of the Texas Insurance Code, negligence, negligent misrepresentation, and fraud are not dismissed.  The plaintiffs' claims against Mierendorf, for which the plaintiffs seek to hold Woodbury liable under the doctrines of *respondeat superior* and agency, also remain.  A status and scheduling conference is set for **July 24, 2015 at 8:30 a.m.** in Courtroom 11-B.

SIGNED on May 26, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge